1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JULIA M. JONES,

               Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

               Defendant.

NO.  C10-992-RSM-JPD

REPORT AND
RECOMMENDATION

      Plaintiff Julia M. Jones appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied her applications for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

## I.      FACTS AND PROCEDURAL HISTORY

      At the time of the administrative hearing, plaintiff was a fifty-two-year-old woman with

a high school education.  Administrative Record ("AR") at 21-22.  Her past work experience

includes employment as a bookkeeper between 1990 and 1994, and a customer service

representative for a health care insurance business between 1994 and 2005.  AR at 36.  Plaintiff

was last gainfully employed in December 2005.  AR at 9, 88-92, 99, 103.

Plaintiff asserts that she is disabled due to severe back pain and severe chronic pain secondary to fibromyalgia, which she alleges prevent her from sitting or standing sufficiently to maintain employment. AR at 99, 103. She asserts an onset date of December 16, 2005. AR at 99, 103.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 42-44, 47-48. Plaintiff requested a hearing, which took place on February 7, 2008. AR at 17-39. On April 18, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform her past relevant work as a benefits clerk and reception clerk. AR at 6-16.

Plaintiff's request for review by the Appeals Council was denied on May 13, 2010, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On June 21, 2010, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Jones bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On April 14, 2008, the ALJ issued a decision finding the following:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.   The claimant has not engaged in substantial gainful activity since December 16, 2005, the alleged onset date.

3.   The claimant has the following severe impairments: fibromyalgia and degenerative disc disease of the lumbar spine.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(1) except she can stand/walk four hours in a eight-hour day in 20 minute increments and she can sit four hours in an eight-hour day.  She cannot perform repetitive pushing/pulling with the upper extremities.  She can occasionally climb stairs, balance, stoop, kneel, crouch and crawl.  She cannot climb ladders.  She cannot work around heights or hazards and much (sic) avoid extreme temperatures and wetness/dampness.  Considering the effects of her multiple medications, she can perform detailed but not complex tasks.

6.   The claimant is capable of performing past relevant work as a benefit clerk and reception clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.   The claimant has not been under a disability, as defined in the Social Security Act, from December 16, 2005 through the date of this decision.

AR at 11-15.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Did the ALJ properly evaluate the opinion of examining physician Mark Heilbrunn, M.D., as well as the findings of the state agency?

2.     Did the ALJ err by failing to provide clear and convincing reasons for rejecting plaintiff's testimony regarding her pain and limitations?

3.     Did the ALJ err at step four by finding that plaintiff can perform her past relevant work?

4.     Did the ALJ err by relying on testimony of the vocational expert without establishing that his testimony was consistent with the Dictionary of Occupational Titles?

Dkt. 15 at 6-18; Dkt. 22 at 1-2.

## VII.     DISCUSSION

A.     The ALJ Erred in Evaluating the Medical Opinion Evidence

*1.     Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they,

rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2.   *Dr. Heilbrunn's March 2006 Medical Opinion and the State Agency's Findings*

Plaintiff argues that the ALJ "failed to provide reasons specific to the actual limitations in plaintiff's shoulders, elbows and wrists Dr. Heilbrunn identified on exam, which would result in reaching limitations and keyboard limitations.  Nor did the ALJ provide reasons specific to the rejection of the lifting limitation Dr. Heilbrunn identified."  Dkt. 15 at 15.  Plaintiff also challenges the ALJ's rejection of Dr. Heilbrunn's diagnosis of hip pain, on the grounds that other physicians have attributed plaintiff's hip pain to her fibromyalgia.  *Id.* at 16.  The Commissioner responds that the ALJ properly provided specific and legitimate reasons for

rejecting some of Dr. Heilbrunn's opinions regarding plaintiff's limitations. *See* Dkt. 22 at 11-12.

On March 2, 2006, Dr. Heilbrunn conducted a consultative disability examination of plaintiff that included reviewing some prior medical records, as well as performing a physical examination that included range of motion testing. AR at 225-30. Dr. Heilbrunn noted that plaintiff's chief complaints are low back pain, fibromyalgia, bilateral hip pain, and bilateral knee pain. AR at 225. He also noted that plaintiff "appeared fatigued. Her movements are very slow and appear painful. She had difficulty and required assistance in putting her pants on . . . She needed assistance when mounting or dismounting the examination table." AR at 227. Dr. Heilbrunn concluded that plaintiff "manifests a postural range of motion limitation of her lumbar back, neck, and hips. She has a manipulative range of motion limitation of both shoulders, and both elbows in flexion. She has decreased range of motion of the wrists in ulnar deviation." AR at 229.

Based upon his physical examination, Dr. Heilbrunn opined that plaintiff "would have a limitation in standing or walking to 20 minutes uninterrupted, and for a cumulative length of time of 3-4 out of 8 hours. She has a limitation in lifting to a maximum of 2 pounds with either hand on an occasional basis." AR at 229. He also found that plaintiff can "sit for at least 20-30 minutes uninterrupted, as manifested in the examination, and for a cumulative length of time of 5-6 hours in an 8-hour work period, with limitations secondary to lumbar degenerative joint disease." AR at 230. With respect to plaintiff's ability to use her hands for work related activities, Dr. Heilbrunn found that plaintiff can perform "firm grasping, manipulating, and fine and dexterous movements; she would not be able to accomplish constant or frequent overhead movements with either arm . . . She would have some limitation with frequent movements of the wrist secondary to decreased wrist range of motion." AR at 230.

In determining plaintiff's RFC, the ALJ summarized Dr. Heilbrunn's findings, as well as the findings of the non-examining state agency analyst, Manuel Oaxaca, SDM, who

disagreed with many of Dr. Heilbrunn's conclusions.  AR at 15, 225-30, 234-41.  The ALJ also noted that "the State agency medical consultant, Timothy J. Smith, M.D., affirmed the residual functional capacity assessment [of Mr. Oaxaca] as written."  AR at 15, 249.  After summarizing these conflicting medical opinions, the ALJ declined to fully adopt the opinions of either Dr. Heilbrunn or the state agency.  The ALJ asserted that "I agree [with Mr. Oaxaca] that the claimant is not as limited as described by Dr. Heilbrunn; however, I find that she cannot perform work at a light exertional level as assessed by the State agency."  AR at 15.  The ALJ concluded that "physically, giving the claimant the benefit of the doubt, she retains a capacity for sedentary work."  AR at 15.  Thus, the ALJ implicitly found that plaintiff can lift up to 10 pounds at a time.  *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.").

The Court agrees with plaintiff that the ALJ committed reversible error by failing to explain the weight he afforded to these conflicting medical opinions.  Although neither party addresses this issue in their briefing, the Court also finds that the ALJ erred by failing to explain the weight afforded to the opinions of Mr. Oaxaca and Dr. Smith, although they are not treating or examining physicians.  *See* SSR 96-6p, 1996 WL 374180, *2 (providing that an ALJ may not ignore state agency medical consultants' opinions "and must explain the weight given to these opinions in their decisions.").

In addition, the ALJ erred by failing to provide specific and legitimate reasons for rejecting some of Dr. Heilbrunn's opinions.  Specifically, the ALJ failed to provide any reason for rejecting Dr. Heilbrunn's finding that plaintiff can only lift two pounds in each hand occasionally, and may have secondary limitations stemming from her limited range of motion in her shoulders, elbows, and wrists.[2]  The Court cannot conclude that this error was harmless,

---

[2] The Court notes that Dr. Heilbrunn did not state that plaintiff was unable to reach, but found that plaintiff could not "accomplish constant or frequent overhead movements[.]"  AR at 230.  Similarly, Dr. Heilbrunn did not opine that plaintiff was unable to keyboard, but asserted that she may

because when the ALJ asked the vocational expert ("VE") if plaintiff would be prohibited from performing her past relevant work if the ALJ credited Dr. Heilbrunn's March 2006 finding that plaintiff can only lift a maximum of two pounds with each hand on an occasional basis, the VE responded in the affirmative.  AR at 38.  Although the ALJ "need not discuss *all* evidence presented" to him or her, the ALJ must explain why "significant probative evidence has been rejected."  *Vincent on Behalf of Vincent v. Heckler,* 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  *See also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).  Because the VE testified that Dr. Heilbrunn's opinions, if fully credited by the ALJ, would indicate that plaintiff is unable to perform her past relevant work, the Court finds that Dr. Heilbrunn's medical opinions constituted "significant probative evidence" that the ALJ needed to provide adequate reasons for rejecting.  AR at 37-38.  The ALJ did not articulate any reasons, let alone specific and legitimate ones, for declining to adopt all of Dr. Heilbrunn's findings in this case.[3]

The Court is unpersuaded by the Commissioner's argument that the ALJ effectively "adopted" the state agency analyst's criticism of Dr. Heilbrunn's findings.  Dkt. 22 at 11.  The ALJ made no such statement.  As discussed above, the ALJ summarized Mr. Oaxaca's RFC assessment, just as he summarized Dr. Heilbrunn's findings, and then declined to fully adopt either opinion without further explanation.  AR at 15.  In any event, in the absence of other independent evidence in the record, the opinions of Mr. Oaxaca or Dr. Smith are insufficient to warrant the rejection of Dr. Heilbrunn's findings.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (providing that a non-examining medical advisor's testimony, without more, does

---

have "some limitation with frequent movements of the wrist secondary to decreased wrist range of motion."  AR at 230.  *See also* AR at 113, 131 (function reports submitted by plaintiff and plaintiff's husband, providing that plaintiff is able to play computer games "often.").

[3] The Court notes one exception, as the ALJ did explain why he discredited Dr. Heilbrunn's diagnosis of hip degenerative joint disease at step two.  AR at 12.  Specifically, the ALJ stated that although "the diagnosis of fibromyalgia and lumbar spine degenerative disc disease are medically established . . . Dr. Heilbrunn did not review any hip x-rays.  In February 2004, x-rays of both hips showed no abnormal findings."  AR at 12.  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Heilbrunn's opinions regarding plaintiff's hips.  AR at 198-99.

not constitute substantial evidence that warrants rejection of either a treating or examining doctor's opinion).

Finally, the Court finds that the Commissioner's remaining arguments attempt to supply a post-hoc rationale for the ALJ's conclusion.  Dkt. 22 at 11-12.  These efforts are unavailing.  A reviewing court cannot affirm the denial of benefits based on a reason not stated or findings that were not made by the ALJ.  *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) ("[I]f the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying benefits originally, then we must decline.").

Accordingly, the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Heilbrunn's opinions, as well as explaining the weight afforded to the state agency's findings.  This matter must be remanded for further administrative proceedings.  On remand, the ALJ is directed to reevaluate the medical opinion evidence in the record, and reassess plaintiff's RFC.

B.      The ALJ Erred In Assessing an Adverse Credibility Determination

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722.  Absent affirmative evidence showing that the claimant is

malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ did not conclude that plaintiff was malingering. The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." AR at 14. The ALJ offered two reasons to support this decision: (1) plaintiff's subjective complaints regarding her pain and the limiting effects of her symptoms were not corroborated by objective signs and findings in the record; and (2) Dr. Ramsbottom noted in June 2007 that plaintiff was able to "get up and get things done" when she took a combination of methadone and hydrocodone. Plaintiff contends that these are not "clear and convincing reasons" for discrediting her testimony. Dkt. 24 at 10.

The Court agrees with plaintiff that the ALJ's first reason for rejecting plaintiff's testimony, that "the evidence documents a lot of pain complaints and little by way of objective signs and findings," AR at 14, is not "clear and convincing" because the ALJ applied an inappropriate legal standard. Dkt. 24 at 10. As discussed above, once a plaintiff has produced medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

REPORT AND RECOMMENDATION- 12

testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *See Bunnell*, 947 F.2d at 347-48; *Reddick*, 157 F.3d at 722.  Because the ALJ concluded at step two that plaintiff's fibromyalgia and degenerative spinal disease constituted severe impairments, the ALJ could not thereafter discredit plaintiff's testimony regarding the severity of her pain or symptoms on the grounds that her testimony was unsupported by objective medical evidence.

In addition, the Court finds the ALJ's attempt to discount plaintiff's subjective complaints based upon the lack of corroborating objective evidence to be particularly egregious in light of the ALJ's acknowledgement that plaintiff suffers from severe fibromyalgia.  Fibromyalgia is a disease that is notable for its lack of objective diagnostic techniques.  *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).  Specifically, the Ninth Circuit has recognized that "[fibromyalgia]'s cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia." *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (citing *Sarchet*, 78 F.3d at 306).  Put differently, "the absence of swelling joints or other orthopedic and neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced."  *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003) (internal quotation omitted).   As a result, the ALJ erred in this case by "effectively requir[ing] objective evidence for a disease that eludes such measurement." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (internal citations omitted).

This does not mean that every claimant asserting fibromyalgia receives a pass to a disability finding.  It does mean, however, that an ALJ who does not consider a plaintiff suffering from fibromyalgia to be credible must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints by employing ordinary techniques of credibility evaluation.  *See Smolen*, 80 F.3d at 1284.

The second reason for discounting plaintiff's testimony proffered by the ALJ was Dr. Ramsbottom's June 2007 treatment note indicating that when plaintiff takes a combination of hydrocodone and methodone, "she is able to get up and get things done" despite her back pain. AR at 268.  The ALJ concluded that "the lack of ongoing significant examination findings and the claimant's report that she can get up and get things done on her medication regimen support a capacity for at least sedentary work."  AR at 14.

However, contrary to this conclusion, as well as the ALJ's assertion that "Dr. Ramsbottom did not note any abnormalities on examination . . . on follow up [in] November 2007," Dr. Ramsbottom's November 12, 2007 treatment note indicated that plaintiff's current medication regimen was not effectively controlling plaintiff's symptoms and pain.  AR at 14. Specifically, Dr. Ramsbottom noted that since plaintiff's June 2007 visit, plaintiff was experiencing back spasms and "increasing problems sleeping, particularly because of the pain."  AR at 267.  As a result of plaintiff's increasing symptoms, plaintiff asked Dr. Ramsbottom "if there is anything else that she can do to help with the severe pain and spasming."  AR at 267.  In response, Dr. Ramsbottom "discussed options for helping to modify the pain," and prescribed additional medications for use when plaintiff experiences back spasms or "when she has severe pain breakthrough."  AR at 267.  Dr. Ramsbottom also commented that plaintiff was "relatively disabled" by her spinal disorder and "has been unable to work for the past year."  AR at 267.  In light of this conflicting evidence, without more, the Court cannot uphold the ALJ's finding that plaintiff's "medication regimen support[s] a capacity for at least sedentary work."  AR at 14.

Accordingly, the Court finds that the two reasons proffered by the ALJ are not "clear and convincing reasons" for discrediting plaintiff's testimony concerning the severity and limitations resulting from her symptoms and pain.  On remand, the ALJ is directed to conduct further findings evaluating the credibility of plaintiff's subjective complaints, and reassess plaintiff's credibility in light of the direction provided by this opinion.

C.      On Remand, the ALJ is Directed to Reevaluate Whether Plaintiff Can Perform Her Past Relevant Work or a Job Existing in the National Economy

Plaintiff argues that the ALJ erred in finding that plaintiff could perform her past relevant work because it is sedentary work and therefore requires the ability to sit for at least six hours out of an eight-hour workday, when the ALJ concluded that plaintiff has the RFC to sit for only four hours maximum.  Dkt. 24 at 6.  In addition, plaintiff argues that the VE's testimony that plaintiff could still perform her past relevant work, AR at 37, deviated from the Dictionary of Occupational Titles ("DOT") because "the two jobs the VE identified are both defined as 'sedentary' jobs by the DOT" and therefore "the VE's testimony . . . is patently erroneous [as] a person must be able to sit for 6 hours to do such work."  Dkt. 15 at 10-11.  *See also* SSR 83-10, 1983 WL 31251, *5 (providing that with respect to sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet[.]").

The Commissioner contends that "the primary source of information regarding a claimant's past relevant work comes from the claimant, [and] a vocational expert's testimony can be useful but is not required at step four if the claimant fails to show that she was unable to return to her past relevant work as it was actually or generally performed."  Dkt. 22 at 15 (citing *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)).  The Commissioner argues that in this case, "the ALJ properly relied on Plaintiff's reports regarding her past relevant work and proposed a valid [RFC] hypothetical to the vocational expert . . . Plaintiff's argument that the ALJ erred in determining that she could not return to her past relevant work as it is generally performed ignores that she is capable of returning to her past relevant work as it was actually performed."  Dkt. 22 at 15.  Because "Plaintiff reported that both [of her prior relevant] jobs required her to sit less than 4 hours a day . . . the ALJ properly determined that Plaintiff could

REPORT AND RECOMMENDATION- 15

perform her past relevant work as she actually performed the jobs." *Id*. at 15-16.  Plaintiff responds that "[t]here is a patent conflict in the evidence [establishing] how much sitting Plaintiff actually did in her past relevant work."  Dkt. 24 at 6.  *Compare* AR at 104 (plaintiff's report that her customer service job involved sitting for 8 hours a day), with AR 119-20 (plaintiff's report that her customer service job involved sitting for 3.5 hours a day, and her bookkeeper job involved sitting for 3 hours a day).

Contrary to plaintiff's argument, "the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability."  SSR 96-9p, 1996 WL 374185, *4.  Specifically, "if an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded.  The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work."  *Id.* at *6.  The regulations recognize, however, that "[t]here may be a number of occupations . . . and jobs that exist in significant numbers, that an individual may still be able to perform even with a sedentary occupation base that has been eroded."  *Id*. at *4.  Thus, in cases such as this one, where an ALJ determines that a claimant is unable to perform the full range of sedentary work, the ALJ must "cite examples of occupations or jobs the individual can do and provide a statement of the incident of such word in the region where the individual resides or in several regions of the country."  *Id*. at *5.

Because this case is already being remanded for reevaluation of the medical opinion evidence as well as plaintiff's RFC, it is unnecessary to determine whether the ALJ erred by concluding that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of [her past relevant] work . . . the claimant is able to perform it as actually and generally performed."  AR at 15.  However, on remand, if the ALJ concludes that plaintiff is capable of performing less than a full range of sedentary work, the ALJ is directed to solicit additional testimony from the plaintiff at the hearing regarding her past relevant work before concluding that she is able to perform it as actually performed.  Moreover, the ALJ is

1    directed to solicit testimony from a VE that is consistent with the DOT before concluding that

2    plaintiff is able to perform her past relevant work as it is generally performed, or concluding

3    that plaintiff is able to perform other jobs existing in significant numbers in the national

4    economy.

5            D.      <u>On Remand, the ALJ is Directed to Comply with SSR 00-4p.</u>

6            Plaintiff alleges that the ALJ failed to comply with SSR 00-4p because he did not ask

7    the VE during the hearing whether his testimony was consistent with the Dictionary of

8    Occupational Titles ("DOT").  Dkt. 15 at 10.  The Commissioner responds that "the ALJ did

9    not need to determine whether the vocational expert's testimony was consistent with the

10   [DOT] because the ALJ did not rely on the DOT to determine that Plaintiff could perform her

11   past relevant work as she actually performed it."  Dkt. 22 at 16.

12           SSR 00-4p provides that whenever "a VE or [vocational specialist ("VS")] provides

13   evidence about the requirements of a job or occupation, the [ALJ] has an affirmative

14   responsibility to ask about any possible conflict between that VE or VS evidence and

15   information provided in the DOT."  SSR 00-4p, 2000 WL 1898704, at *4.  Specifically, the

16   ALJ must ask whether the evidence provided conflicts with information provided in the DOT,

17   and if it does, "obtain a reasonable explanation for the apparent conflict."  *Id.*

18           As discussed above, the Court need not determine whether the ALJ erred at step four

19   because this case is already being remanded for further proceedings.  If the ALJ considers

20   testimony from a VE or VS on remand, however, the ALJ is directed to make an appropriate

21   inquiry in accordance with SSR 00-4p to determine whether the testimony conflicts with the

22   DOT.  If it does, the ALJ must obtain a reasonable explanation for the conflict before relying

23   on that testimony at steps four or five of the sequential evaluation process.  *See id.*

24

25

26

REPORT AND RECOMMENDATION- 17

1

## VIII.   CONCLUSION

2
        For the foregoing reasons, the Court recommends that this case be REVERSED and

3
REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4
instructions.  A proposed order accompanies this Report and Recommendation.

5
        DATED this 25th day of February, 2011.

6

7
                                        _____
                                        JAMES P. DONOHUE
8                                       United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION- 18